ORAL ARGUMENT NOT YET SCHEDULED
**No. 23-5067**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

MEDICAL IMAGING & TECHNOLOGY ALLIANCE AND
ADVANCED MEDICAL TECHNOLOGY ASSOCIATION,

*Appellants*,

v.

LIBRARY OF CONGRESS AND CARLA HAYDEN, IN HER OFFICIAL
CAPACITY AS LIBRARIAN OF CONGRESS,

*Appellees*.

_____

Appeal from the United States District Court for the District of Columbia
(No. 22-cv-00499, Hon. Beryl A. Howell)

_____

**BRIEF OF AMICUS CURIAE
AMERICANS FOR PROSPERITY FOUNDATION
IN SUPPORT OF APPELLANTS AND REVERSAL**

_____

Michael Pepson
Ryan P. Mulvey
AMERICANS FOR PROSPERITY FOUNDATION
1310 N. Courthouse Road, Ste. 700
Arlington, VA 22201
571.329.4529
mpepson@afphq.org

Dated: June 9, 2023          *Counsel for Amicus Curiae*

**CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES**

Under Circuit Rule 28(a)(1), the undersigned counsel certifies:

**A. Parties and Amici**

Appellants are the Medical Imaging & Technology Alliance ("MITA") and Advanced Medical Technology Association ("AdvaMed"). Appellees are the Library of Congress and Carla Hayden, in her official capacity as Librarian of Congress.

*Amici curiae* who are known to counsel are the National Association of Manufacturers and Washington Legal Foundation.

*Amicus curiae* Americans for Prosperity Foundation is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

**B.    Rulings Under Review**

The ruling under review is *MITA v. Library of Congress*, No. 22-499, Dkt. 26 (Mar. 7, 2023).

**C.    Related Cases**

This case has not previously been before this Court, and there are no related cases currently pending in this or any other court.

/s/ Michael Pepson

## CERTIFICATE UNDER CIRCUIT RULE 29(D)

Under Circuit Rule 29(d), undersigned counsel for Americans for Prosperity Foundation ("AFPF") represents that the other *amici curiae* supporting Appellants, of which it is aware may file, are the National Association of Manufacturers and Washington Legal Foundation.

Among *amici* supporting Appellants, AFPF's brief focuses on the question of whether the Librarian's exemption is reviewable under the Administrative Procedure Act.  In particular, AFPF's brief addresses the question of what branch of government the Librarian is located in and its implications for whether the Librarian is an "agency" as defined by the APA.

<u>    /s/ Michael Pepson        </u>

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

Under D.C. Circuit Rule 26.1(b), AFPF further states that it is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas are the separation of powers and constitutionally limited government. As part of this mission, it appears as *amicus curiae* before federal and state courts.

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES ...........i

CERTIFICATE UNDER CIRCUIT RULE 29(D) .............................................................ii

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ...................................................iii

TABLE OF CONTENTS ...................................................................................................iv

TABLE OF AUTHORITIES ...............................................................................................v

GLOSSARY .....................................................................................................................xi

INTEREST OF AMICUS CURIAE ......................................................................................1

SUMMARY OF ARGUMENT ............................................................................................2

ARGUMENT ....................................................................................................................5

    I.     Administrative Bodies Cannot Straddle Multiple Branches of Government...........................................................................................5

    II.    The Librarian Is An Article II Executive Official Located in An Executive Department for All Purposes ...............................................9

    III.   The Library Is An "Agency" Under the APA.......................................15

CONCLUSION ...............................................................................................................20

CERTIFICATE OF COMPLIANCE ...................................................................................21

CERTIFICATE OF SERVICE ...........................................................................................22

TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Amgen Inc. v. Sanofi*,
  598 U.S. ____ (2023) ...........................................................6

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. ____ (2023) ...........................................................6

*Bowsher v. Synar*,
  478 U.S. 714 (1986) ...................................................7, 10, 13

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ...............................................................11

*City of Arlington v. Federal Communications Commission*,
  569 U.S. 290 (2013) ..........................................4, 7, 13, 18

*Clark v. Library of Congress*,
  750 F.2d 89 (D.C. Cir. 1984) ...............................................16

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ....................................4, 7, 9, 13, 18

*Crim v. Commissioner of Internal Revenue*,
  66 F.4th 999 (D.C. Cir. 2023) ................................11, 12, 17

*Eltra Corp. v. Ringer*,
  579 F.2d 294 (4th Cir. 1978)................................................12

*Employees v. Boorstin*,
  751 F.2d 1405 (D.C. Cir. 1985) ..........................................16

*Federal Trade Commission v. Ruberoid Co.*,
  343 U.S. 470 (1952) .............................................................9

*Fleming v. U.S. Department of Agriculture*,
  987 F.3d 1093 (D.C. Cir. 2021) ....................1, 2, 7, 10, 19

*Fox TV Stations, Inc. v. Aereokiller, LLC*,
  851 F.3d 1002 (9th Cir. 2017)................................................8

*Authorities upon which AFPF chiefly relies are marked with an asterisk.

v

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
    561 U.S. 477 (2010) ...........................................................................4, 16

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
    537 F.3d 667 (D.C. Cir. 2008) ..............................................................9

*Freytag v. Commissioner of Internal Revenue*,
    501 U.S. 868 (1991) .............................................................................11

*Garcia v. Garland*,
    64 F.4th 62 (2d Cir. 2023)......................................................................7

*Green v. U.S. Department of Justice*,
    54 F.4th 738 (D.C. Cir. 2022) .............................................................13

*Gundy v. United States*,
    139 S. Ct. 2116 (2019) ......................................................................5, 13

*Immigration & Naturalization Service v. Chadha*,
    462 U.S. 919 (1983) ...............................................................................5

*Intercollegiate Broadcasting System v. Copyright Royalty Board*,
    684 F.3d 1332 (D.C. Cir. 2012) ..........................................3, 4, 9, 11, 13, 14, 16

*J.W. Hampton, Jr. & Co. v. United States*,
    276 U.S. 394 (1928) ..........................................................................7, 13

*Mach Mining, LLC v. EEOC*,
    575 U.S. 480 (2015) ........................................................................19, 20

*Martin v. Hunter's Lessee*,
    14 U.S. (1 Wheat.) 304 (1816) ...............................................................5

*Metropolitan Washington Airports Authority v.
Citizens for the Abatement of Aircraft Noise, Inc.*,
    501 U.S. 252 (1991) .............................................................5, 7, 9, 15, 18

*Michigan v. Environmental Protection Agency*,
    576 U.S. 743 (2015) ...............................................................................6

*Mistretta v. United States*,
    488 U.S. 361 (1989) .............................................................................10

*National Labor Relations Board v. Canning*,
    573 U.S. 513 (2014) ...................................................................5

*Norton v. Shelby County*,
    118 U.S. 425 (1886) ................................................................15

*\*Seila Law LLC v. Consumer Financial Protection Bureau*,
    140 S. Ct. 2183 (2020) ...............................................1, 2, 8, 10, 16

*Shankland v. Washington*,
    30 U.S. 390 (1831) ....................................................................6

*SoundExchange, Inc. v. Librarian of Congress*,
    571 F.3d 1220 (D.C. Cir. 2009) ...........................................12, 16

*Springer v. Government of the Philippine Islands*,
    277 U.S. 189 (1928) ...................................................................7

*Stern v. Marshall*,
    564 U.S. 462 (2011) ...................................................................7

*Tiger Lily, LLC v. U.S. Department of Housing & Urban Development*,
    5 F.4th 666 (6th Cir. 2021) .........................................................6

*United States v. Burwell*,
    690 F.3d 500 (D.C. Cir. 2012) ...................................................17

*U.S. Department of Transportation v. Ass'n of American Railroads*,
    575 U.S. 43 (2015) ................................................................6, 14

*Washington Legal Foundation v. U.S. Sentencing Commission*,
    17 F.3d 1446 (D.C. Cir. 1994) ...................................................16

*Wayman v. Southard*,
    23 U.S. (10 Wheat.) 1 (1825) ......................................................6

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Service*,
    139 S. Ct. 361 (2018) ...............................................................20

*Whitman v. American Trucking Ass'ns, Inc.*,
    531 U.S. 457 (2001) ................................................................6, 7

## Constitution

U.S. Const. art. I, § 1 ..............................................................4, 5, 18, 19

U.S. Const. art. I, § 2, cl. 5 ..............................................................7, 8, 11

U.S. Const. art. I, § 3, cl. 5 ..............................................................8, 11

U.S. Const. art. I, § 6 ..............................................................9

U.S. Const. art. I, § 7 ..............................................................4

U.S. Const. art. I, § 8, cl. 8 ..............................................................6

U.S. Const. art. II, § 2, cl. 2 ..............................................................3, 15

U.S. Const. art. II, § 3 ..............................................................6

U.S. Const. art. II, § 4 ..............................................................9

## Statutes

2 U.S.C. § 185(c)(1)(A) ..............................................................11

2 U.S.C. § 166 ..............................................................14

2 U.S.C. § 1801 ..............................................................15

5 U.S.C. § 551(5) ..............................................................19

5 U.S.C. § 553 ..............................................................19

5 U.S.C. § 701(b)(1) ..............................................................4

5 U.S.C. § 701(b)(1)(A) ..............................................................15, 16, 17, 18

17 U.S.C. § 701(a) ..............................................................12

17 U.S.C. § 1201(a)(1)(C) ..............................................................3, 12, 13, 17

44 U.S.C. § 301 ..............................................................14

44 U.S.C. § 1501 ..............................................................14

44 U.S.C. § 1510(a) ..............................................................14

## Federal Register

86 Fed. Reg. 59,627 (Oct. 28, 2021) ........................................................14

## Regulations

37 C.F.R. § 201.40 ...................................................................................14

## Other Authorities

Black's Law Dictionary (4th rev. ed. 1968) .............................................18

Dep't of Justice, Attorney General's Manual on the Administrative
    Procedure Act (1947) ..........................................................................19

William J. Clinton, Statement on Signing the Digital Millennium
    Copyright Act (Oct. 28, 1998),
    https://www.presidency.ucsb.edu/node/225308.................................15

Executive Branch Participation in the Cyberspace Solarium Commission,
    44 Op. O.L.C. __ (Oct. 9, 2020) ..........................................................8

Federal Respondents' Brief In Opposition,
    *Intercollegiate Broadcasting System v. Copyright Royalty Board*,
    No. 12-928 (U.S. filed Apr. 26, 2013) ...........................................9, 14

JeanAne Marie Jiles,
    *Copyright Protection in the New Millennium: Amending the Digital
    Millennium Copyright Act to Prevent Constitutional Challenges*,
    52 Admin. L. Rev. 443 (2000) ..............................................13, 15, 17

Naomi Rao,
    *Removal: Necessary and Sufficient for Presidential Control*,
    65 Ala. L. Rev. 1205 (2014) ................................................................10

The Constitutional Separation of Powers Between the President and
    Congress, 20 Op. O.L.C. 124 (1996) .......................10, 11, 12, 15, 17

Webster's 1913, https://www.websters1913.com/words/Congress .......................19

Carissa Wilson,
  *The 'Agencies' of Copyright Law: Constitutional and Administrative
  Law on the CASE Act of 2020*,
  29 Tex. Intell. Prop. L.J. 415 (2021) ............................................................8, 15

## GLOSSARY

Administrative Procedure Act ................................................................APA

Digital Millennium Copyright Act ................................................DMCA

Office of Legal Counsel ........................................................................OLC

**INTEREST OF *AMICUS CURIAE*[1]**

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas are the separation of powers and constitutionally limited government. As part of this mission, it appears as *amicus curiae* before federal and state courts.

"The Constitution sets out three branches of Government and provides each with a different form of power—legislative, executive, and judicial." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2216 (2020) (Thomas, J., concurring) (citations omitted). AFPF has an interest in this case because it believes Congress cannot constitutionally "create agencies that straddle multiple branches of government." *Id.* It is important for this Court to settle which branch of government the Librarian is housed within.

More broadly, Article II officials like the Librarian should not be allowed "to duck and weave [their] way out of meaningful judicial review," *Fleming v. U.S.*

---

[1] All parties have consented to the filing of this brief. Under FRAP 29(a)(4)(E), *amicus curiae* states that no counsel for a party other than AFPF authored this brief in whole or in part, and no counsel or party other than AFPF made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission.

*Dep't of Agric.*, 987 F.3d 1093, 1111 (D.C. Cir. 2021) (Rao, J., concurring in part, dissenting in part), by claiming refuge in Article I from accountability under the Administrative Procedure Act ("APA"), as Appellees did below.  The Constitution does not permit constitutional chameleons to camouflage themselves among the various leaves of the political branches as they deem expedient.

<h3 style="text-align:center">SUMMARY OF ARGUMENT</h3>

In this country, all government power must flow from its proper source—We the People.  Our system of government relies on the consent of the governed memorialized in the U.S. Constitution.  The People have agreed on a system of separated powers whereby the legislative, executive, and judicial branches function as checks and balances upon one another, ensuring accountability and protecting liberty.  As its text, structure, and history make plain, our Constitution established three branches of government, which are supposed to be separate.  This means Congress cannot create administrative bodies that wear multiple hats—switching between Article I and Article II as circumstances require.  "Congress [cannot] create agencies that straddle multiple branches of Government" because such bodies "simply do not comport with [our] constitutional structure."  *Seila Law*, 140 S. Ct. at 2216 (Thomas, J., concurring).  So too here.  The Library of Congress is *either* an arm of Congress under Article I *or* an Article II executive agency.  It cannot be or contain components of both.

The answer is the latter: The Librarian is an Article II official for *all* purposes and her executive actions are subject to review under the APA, as the Library and all of its components are "agencies" under that law.

The Librarian is a Head of Department under the Appointments Clause and thus subject to plenary presidential control.  The Appointments Clause provides that "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.  As this Court held in *Intercollegiate Broadcasting Systems v. Copyright Royalty Board* [hereinafter "*Intercollegiate*"], "the Librarian is a Head of Department" under the Appointments Clause because Congress has vested in her the ability to appoint and supervise inferior officers.  684 F.3d 1332, 1342 (D.C. Cir. 2012).  "Heads of Departments" refers to Executive Officers, whom the President must be able to remove at will.  That is a telling indicator that the Librarian is an Article II official.

Bolstering the conclusion that Article II is the Librarian's constitutional home, the rulemaking power the Librarian exercised here, under the Supreme Court's current understanding of our constitutional structure, is an exercise of executive power.  If it were otherwise the provision of the Digital Millennium Copyright Act ("DMCA") at issue, 17 U.S.C. § 1201(a)(1)(C), would have granted the Librarian Congress's exclusive legislative power, which would violate Article I's Vesting

Clause, U.S. Const. art. I, § 1, and principles of bicameralism and presentment. U.S. Const. art. I, § 7.

It is equally clear the Librarian is "agency" within the meaning of the APA. The Librarian is plainly an "authority of the Government of the United States." 5 U.S.C. § 701(b)(1). And because the Librarian is an Article II executive official subject to plenary presidential oversight, it would be profoundly atextual and illogical to conclude that she somehow is (or is part of) "*the* Congress," *id.* (emphasis added), and on that basis not an "agency." Accordingly, the Librarian's rulemaking is reviewable under the APA.

To the extent some of this Circuit's decisions from the 1980s and 1990s appear to the contrary—they are not, *see* Appellants' Br. 38–39 & n.2—they were abrogated by this Court's holding in *Intercollegiate*, 684 F.3d at 1332, and the Supreme Court's decisions in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), *City of Arlington v. Federal Communications Commission*, 569 U.S. 290 (2013), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021). These decisions are also distinguishable in light of subsequent legislation like the DCMA granting the Librarian additional executive powers she did not possess when those cases were decided.

For these reasons, this Court should hold the Librarian is not a constitutional chameleon who can change colors as circumstances demand but rather is an Article II executive official for all purposes, whose actions are subject to APA review.

## ARGUMENT

## I.     Administrative Bodies Cannot Straddle Multiple Branches of Government.

"[T]he Constitution's core, government-structuring provisions are no less critical to preserving liberty than are the later adopted provisions of the Bill of Rights."  *Nat'l Labor Relations Bd. v. Canning*, 573 U.S. 513, 571 (2014).  To protect liberty, "[t]he structure of our Government as conceived by the Framers of our Constitution disperses the federal power among the three branches—the Legislative, the Executive, and the Judicial—placing both substantive and procedural limitations on each."  *Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise*, 501 U.S. 252, 272 (1991) [hereinafter "*MWAA*"]; *see Immigration & Naturalization Serv. v. Chadha*, 462 U.S. 919, 951 (1983); *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 329 (1816).

Toward this end, the Constitution "vest[s] the authority to exercise different aspects of the people's sovereign power in distinct entities."  *Gundy v. United States*, 139 S. Ct. 2116, 2133 (2019) (Gorsuch, J., dissenting).  Article I vests "[a]ll legislative Powers herein granted" in Congress.  U.S. Const. art. I, § 1; *see Gundy*, 139 S. Ct. at 2133 (Gorsuch, J., dissenting).  Relevant here, "[t]he Constitution [also]

vests Congress with the power to 'promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.'"[2] *Amgen Inc. v. Sanofi*, 598 U.S. ____ (2023) (slip op. 7) (quoting U.S. Const. art. I, § 8, cl. 8).  Article II tasks the Executive Branch with faithfully executing the law.  U.S. Const. art. II, § 3.  Article III "vests the judicial power exclusively in Article III courts[.]"  *Michigan v. Envtl. Prot. Agency*, 576 U.S. 743, 762 (2015) (Thomas, J., concurring).  "That is the equilibrium the Constitution demands."  *Tiger Lily, LLC v. U.S. Dep't of Housing & Urban Dev.*, 5 F.4th 666, 673 (6th Cir. 2021) (Thapar, J., concurring).

"The allocation of powers in the Constitution is absolute[.]"  *U.S. Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 69 (2015) (Thomas, J., concurring).  These sovereign functions may not be subdelegated.  *See Shankland v. Washington*, 30 U.S. 390, 395 (1831) (Story, J.) ("[T]he general rule of law is, that a delegated authority cannot be delegated.").  This means Congress may not delegate its legislative power to other entities: Article I's "text permits no delegation of those powers[.]"  *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 472 (2001); *see Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42 (1825) (Marshall, C.J.).  And Article II agencies can only

---

[2] Congress has exercised this authority.  For example, "[t]he Copyright Act encourages creativity by granting to the author of an original work 'a bundle of exclusive rights.'"  *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. ____ (2023) (slip op. 13) (citation omitted).

exercise executive power.  *See City of Arlington*, 569 U.S. at 304 n.4; *see also Fleming*, 987 F.3d at 1115 (Rao, J., concurring in part, dissenting in part) ("officers of the Executive Branch cannot exercise anything but executive power"); *accord Garcia v. Garland*, 64 F.4th 62, 70 n.7 (2d Cir. 2023) (Menashi, J.) ("Even when an executive agency acts like a legislative or judicial actor, it still exercises executive power.").  In sum, "Congress lacks the power to delegate to Executive Branch officers either the legislative power or the judicial power."  *Fleming*, 987 F.3d at 1116 (Rao, J., concurring in part, dissenting in part) (citing *Whitman*, 531 U.S. at 472; *Stern v. Marshall*, 564 U.S. 462, 484 (2011)); *see Collins,* 141 S. Ct. at 1792 n.29 (Thomas, J., concurring) (collecting cases).

Nor does the Constitution permit the blending of these powers into one body.  *See Springer v. Gov't of the Philippine Islands*, 277 U.S. 189, 201–02 (1928).  Congress can only exercise legislative powers and may not "invest itself or its members with either executive power or judicial power."  *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 406 (1928); *see, e.g.*, *MWAA*, 501 U.S. at 276; *Bowsher v. Synar*, 478 U.S. 714, 726 (1986) ("The structure of the Constitution does not permit Congress to execute the laws[.]").

This means that, within other constitutional limits, Congress can create entities that are *either* headed by Officers chosen and supervised by Congress that perform certain functions in aid of Congress's legislative purposes, *see* U.S. Const.

art. I, § 2, cl. 5; *id.* art. I, § 3, cl. 5, *or* that exercise Article II executive power subject to presidential control.  But Congress cannot create administrative bodies that are supervised by the President under Article II and exercise executive power while also acting as a legislative arm of Congress under Article I.[3]  An administrative body must be located in only one branch of government—executive or legislative—and cannot serve both Article I and Article II masters in the constitutional sense.  *See* Executive Branch Participation in the Cyberspace Solarium Commission, 44 Op. O.L.C. __ (Oct. 9, 2020) (slip op. 6) ("In our tripartite constitutional structure, any commission performing federal functions must reside within a single one of the three branches of government."); *cf. Fox TV Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002, 1013 n.4 (9th Cir. 2017) ("[I]t is not clear whether the Library of Congress is part of the executive *or* legislative branch." (emphasis added)).  The Constitution does not countenance administrative bodies straddling multiple branches of government.  *See Seila Law*, 140 S. Ct. at 2216 (Thomas, J., concurring); *see also*

---

[3] The district court found "[t]he Library serves both executive and legislative functions," but concluded it "does not run afoul of separation of powers principles so long as both executive *and* legislative power are not simultaneously wielded when conducting those functions."  JA64.  It is unclear what it means to "simultaneously wield[]" power.  JA64.  But that finding was an error.  Indeed, "to the extent this 'hybrid' nature is interpreted as allowing the Library to sit within both the executive and legislative branches, or to sit within only one branch but have components that are part of another, the idea raises grave constitutional concerns."  Carissa Wilson, *The 'Agencies' of Copyright Law: Constitutional and Administrative Law on the CASE Act of 2020*, 29 Tex. Intell. Prop. L.J. 415, 424 (2021).

U.S. Const. art. I, § 6; *cf. Fed. Trade Comm'n v. Ruberoid Co.*, 343 U.S. 470, 487–88 (1952) (Jackson, J., concurring).

## II. The Librarian Is An Article II Executive Official Located in an Executive Department for All Purposes.

Application of these principles here suggests the Librarian's constitutional home is Article II.[4]

*First*, the Librarian is subject to full Presidential control.  As this Court has recognized, the Librarian "is subject to unrestricted removal by the President."[5] *Intercollegiate*, 684 F.3d at 1341 (citation omitted); *see Collins*, 141 S. Ct. at 1787 ("[T]he Constitution prohibits even modest restrictions on the President's power to remove the head of an agency with a single top officer.").  That matters.

---

[4] Alternatively, if the Librarian is an agent of Congress, the rulemaking at issue here would be unconstitutional regardless of whether the Librarian's power is characterized as executive or legislative.  *See MWAA*, 501 U.S. at 276 ("If the power is executive, the Constitution does not permit an agent of Congress to exercise it.  If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I, § 7.").

[5] "[A]s early as 1802 Congress vested authority to appoint the Librarian in the President alone[.]" Fed. Resp'ts' BIO at 17, *Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, No. 12-928 (U.S. filed Apr. 26, 2013) (citing Act of Jan. 26, 1802, ch. 4, §§ 3–4, 2 Stat. 129; John Young Cole, For Congress and the Nation: A Chronological History of the Library of Congress 3–4 (1979)). And "Presidents Jackson and Lincoln each exercised that removal authority." *Id.* at 16.  Congress also has some ability to remove executive officers.  "The Constitution provides that all executive and judicial officers of the Federal Government can be removed through the impeachment process." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 537 F.3d 667, 691 n.3 (D.C. Cir. 2008) (Kavanaugh, J., dissenting), *overruled*, 561 U.S. 477 (2010) (citing U.S. Const. art. II, § 4).

As Justice Scalia observed: "It would seem logical to decide the question of which Branch an agency belongs to on the basis of who controls its actions: If Congress, the Legislative Branch; if the President, the Executive Branch; if the courts (or perhaps the judges), the Judicial Branch." *Mistretta v. United States*, 488 U.S. 361, 423 (1989) (Scalia, J., dissenting).  The power to remove, like the power to appoint, is the power to control.[6]  *See Fleming*, 987 F.3d at 1113 (Rao, J., concurring in part, dissenting in part) ("'removal at will' is 'the most direct method of presidential control'" (quoting *Seila Law*, 140 S. Ct. at 2204)); Naomi Rao, *Removal: Necessary and Sufficient for Presidential Control*, 65 Ala. L. Rev. 1205, 1227 (2014) ("The full removal power provides the President with the ultimate authority to control the exercise of the executive power."); *cf. Bowsher*, 478 U.S. at 727–32 (Comptroller General located in legislative branch because of Congress's removal power).  The President's unfettered ability to control the Librarian's actions through unrestricted at-will removal power is a telling indicator that the Library is

---

[6] OLC has long concluded that "[f]ormal removal authority is sufficient to render the Librarian subject to the President's control for constitutional purposes."  The Constitutional Separation of Powers Between the President and Congress, 20 Op. O.L.C. 124, 173 n.127 (1996) [hereinafter "Separation of Powers"] (citing *Bowsher*, 478 U.S. at 726–27).

within the Executive. Indeed, if the Library of Congress was a legislative entity, the President's power to remove its head would likely be unconstitutional.[7]

*Second*, as this Court has held, the Librarian is the "Head" of a Department under the Appointments Clause. *See Intercollegiate*, 684 F.3d at 1342 ("We too hold that the Librarian is a Head of Department."); *see also, e.g.*, 2 U.S.C. § 185(c)(1)(A) (vesting the Librarian with the authority to appoint the Inspector General of the Library of Congress). This suggests the Librarian is an Article II executive official and not an officer of Congress. This is so because "neither Congress nor its officers were included within the language 'Heads of Departments'" under the Appointments Clause. *Buckley v. Valeo*, 424 U.S. 1, 127 (1976); *see Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 903 (1991) (Scalia, J., concurring in part, concurring in judgment) ("The whole point of this passage [in *Buckley*] is that 'the Heads of Departments' must reasonably be understood to refer exclusively to the Executive Branch (thereby excluding officers of Congress)[.]").[8]

---

[7] *Cf. Crim v. Comm'r of Internal Revenue*, 66 F.4th 999, 1006 (D.C. Cir. 2023) (Walker, J., dissenting) ("If the Tax Court *were* outside of the executive branch, the President's power to remove its judges would be problematic.").

[8] By contrast, "[t]he Constitution . . . expressly provides that each House of Congress is to appoint its own officers." *Buckley*, 424 U.S. at 269 (White, J., concurring in part, dissenting in part); *see* U.S. Const. art. I, § 2, cl. 5 ("The House of Representatives shall chuse their Speaker and other Officers[.]"); *id.* art. I, § 3, cl. 5 ("The Senate shall chuse their other Officers[.]"). OLC has concluded that "[u]nless

*Third*, the Librarian's ability to supervise the Copyright Office—an administrative body wielding sweeping executive powers—further underscores the Librarian must be an Article II official for all purposes. *See* 17 U.S.C. § 701(a); *SoundExchange, Inc. v. Librarian of Cong.*, 571 F.3d 1220, 1226 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (noting Copyright Royalty Board "exercises expansive executive authority"); *Eltra Corp. v. Ringer*, 579 F.2d 294, 301 (4th Cir. 1978) ("The Supreme Court has properly assumed over the decades since 1909 that the Copyright Office is an executive office[.]").  The Librarian's power to appoint and remove Copyright Royalty Judges, as well as to appoint and direct the "Register of Copyrights, together with the subordinate officers and employees of the Copyright Office," 17 U.S.C. § 701(a), signals that the Library of Congress is a unified entity within the Executive Branch headed by an Executive officer over whom the President exercises ultimate removal power.

*Fourth*, the conclusion above is bolstered by the types of powers the Librarian exercises.[9]  For example, in this case, the matter is clear: 17 U.S.C. § 1201(a)(1)(C)

---

it limits its own discretion by statute, Congress enjoys plenary authority to remove its own officers, as do the individual houses of Congress."  Separation of Powers, 20 Op. O.L.C. at 170.

[9] *Cf. Crim*, 66 F.4th at 1007 (Walker, J., dissenting) ("If Congress wishes to change the Tax Court's constitutional position, it can.  But to do so, it must do more than simply tell the judiciary that the Tax Court is outside the executive branch.  Instead, Congress would need to alter the court's substantive features by amending, for instance, the powers it exercises and who controls it." (citations omitted)).

grants the Librarian of Congress Article II executive power.[10]  Specifically, that

provision directs the Librarian to engage in a "rulemaking proceeding" and "conduct

. . . rulemaking" implicating private rights.  *Id.*; *see Green v. U. S. Dep't of Justice,*

54 F.4th 738, 742 (D.C. Cir. 2022) (describing Triannual Review as a "rulemaking

proceeding").  That describes the use of *executive* power, as the term is used today.

As the Supreme Court has explained: "Agencies make rules . . . and conduct

adjudications . . . and have done so since the beginning of the Republic.  These

activities take 'legislative' and 'judicial' forms, but they are exercises of—indeed,

under our constitutional structure they *must be* exercises of—the 'executive

Power.'"  *City of Arlington*, 569 U.S. at 304 n.4 (citation omitted).  Indeed,

"'[i]nterpreting a law enacted by Congress to implement the legislative mandate is

the very essence of 'execution' of the law.'"  *Collins*, 141 S. Ct. at 1785 (quoting

*Bowsher*, 478 U.S. at 733).  As this Court has observed, the Librarian's power "to

promulgate copyright regulations" is "generally associated in modern times with

---

[10] There is reason to think the sweeping, standardless grant of authority to the Librarian to set copyright policy violates Article I's bar against delegation of Congress's exclusive legislative power.  *See* JeanAne Marie Jiles, *Copyright Protection in the New Millennium: Amending the Digital Millennium Copyright Act to Prevent Constitutional Challenges*, 52 Admin. L. Rev. 443, 459–62 (2000) (arguing delegation lacks intelligible principle).  Indeed, "th[e] mutated version of the 'intelligible principle' remark" in *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928), that forms the basis of the "intelligible principle" test "has no basis in the original meaning of the Constitution, in history, or even in the decision from which it was plucked."  *Gundy*, 139 S. Ct. at 2139 (Gorsuch, J., dissenting).

executive agencies rather than legislators." *Intercollegiate*, 684 F.3d at 1341–42. That the Librarian is necessarily exercising Article II executive power in promulgating the exemption—or, alternatively, has unconstitutionally been delegated Congress's Article I legislative power—further confirms that she is an Article II executive official.[11]

The conclusion that the Librarian is within Article II is not altered by the fact that the Congressional Research Service ("CRS") is also housed within the Library. *See* 2 U.S.C. § 166. As the Department of Justice has observed:

> The role of CRS vis-a-vis Congress is akin to the role of the United States Marshals Service vis-a-vis the federal courts. By statute, the primary role and mission of the Marshals Service is to provide for the security and to obey, execute, and enforce all orders of the federal courts. Yet no one would seriously suggest that the Department of Justice is not a "Department" for purposes of the Appointments Clause simply because the Marshals Service is situated within the Department.

Fed. Resp'ts' BIO at 22, *Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, No. 12-928 (U.S. filed Apr. 26, 2013) (cleaned up). In any event, "Congressional pronouncements, though instructive as to matters within Congress' authority to address, are not dispositive . . . for purposes of separation-of-powers analysis under the Constitution." *Ass'n of Am. R.R.*, 575 U.S. at 51.

---

[11] Notably, the exemption was published in the Federal Register, *see* 86 Fed. Reg. 59,627 (Oct. 28, 2021), and Code of Federal Regulations, *see* 37 C.F.R. § 201.40, the latter of which is explicitly reserved for the President and Article II agencies. *See* 44 U.S.C. §§ 1501, 1510(a).

In sum, analysis of the Library of Congress's current structure and powers strongly suggests that Article II is its constitutional home.[12]

## III.    The Library is an "Agency" Under the APA.

Because the Librarian is an Article II official under the Constitution, she cannot be an agent of Congress and thus her actions are reviewable under the APA.[13]

As used in the APA, the term "'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by

---

[12] This conclusion may have implications for the constitutional status of other legislative branch entities, including the Government Accountability Office, Government Publishing Office, and the Architect of the Capitol. *See generally* Separation of Powers, 20 Op. O.L.C. at 171–73 (discussing "[p]aradox of [c]ongressional [a]gencies"). Each of these entities is headed by an officer, who like the Librarian, is appointed by the President and confirmed by the Senate. *See* 2 U.S.C. § 1801 (Architect of the Capitol); 31 U.S.C. § 703 (Comptroller General); 44 U.S.C. § 301 (Director of the Government Publishing Office); *cf.* U.S. Const. art. II, § 2, cl. 2. Moreover, these entities (and officers) exercise functions that implicate the operation of the coordinate branches of government. At the least, however, the Library is unique insofar as it houses the Copyright Office, an undisputed Article II body with substantial executive power, and it also possesses the power to issue regulations impacting private rights. *See* William J. Clinton, Statement on Signing the Digital Millennium Copyright Act (Oct. 28, 1998), https://www.presidency.ucsb.edu/node/225308 ("[T]he Copyright Office is, for constitutional purposes, an executive branch entity."). Congress could cure any constitutional deficiencies in this arrangement by separating the Copyright Office and the power to promulgate copyright regulations from the Library. *See generally* Wilson, 29 Tex. Intell. Prop. L.J. at 450 (suggesting legislative solutions); Jiles, 52 Admin. L. Rev. at 462–63 (similar).

[13] If it were otherwise, and the Librarian truly was an agent of Congress housed within Article I, her actions would be unconstitutional, *see MWAA*, 501 U.S. at 276, and void ab initio. *See Norton v. Shelby Cnty.*, 118 U.S. 425, 449 (1886).

another agency, but does not include—the Congress[.]"  5 U.S.C. § 701(b)(1)(A).

As shown above, the Librarian is an Article II *executive* official exercising *executive*

power.  An Article II administrative body whose Head is controlled by the President,

*Intercollegiate*, 684 F.3d at 1341, and which exercises "expansive executive

authority," *see SoundExchange*, 571 F.3d at 1226 (Kavanaugh, J., concurring),

cannot plausibly be considered part of "the Congress."  Because the Librarian is "an

authority of the Government of the United States" but not Congress, the Librarian is

an "agency" under the APA and her actions are reviewable under the APA.

To the extent *Washington Legal Foundation v. United States Sentencing*

*Commission*, 17 F.3d 1446 (D.C. Cir. 1994), *Employees v. Boorstin*, 751 F.2d 1405

(D.C. Cir. 1985), and *Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984),

characterized the Library as a legislative body in light of its structure and duties as

of 1984, 1985, and 1994, that conclusion has not withstood the test of time.[14]  *Cf.*

*Seila Law*, 140 S. Ct. at 2198 n.2.  In 2012, this Circuit held the Library of Congress

is a Department under the Appointments Clause and the Librarian is its Head whom

the President may remove at will.  *Intercollegiate*, 684 F.3d at 1341–42.  That

conclusion flowed directly from the Supreme Court's 2010 decision in *Free*

*Enterprise Fund.  See id.* (citing *Free Enter. Fund*, 561 U.S. at 510–11).  This

---

[14] In any event, these cases are distinguishable and do not control even on their own
terms.  *See* Appellants' Br. 38–39 & n.2.

precedent, standing alone, abrogates this Circuit's expansion of 5 U.S.C. § 701(b)(1)(A) to bar review, "knock[ing] out the fundamental underpinnings of this Court's decision[s]" in *Clark*, *Boorstin*, and *Washington Legal Foundation*. *See United States v. Burwell*, 690 F.3d 500, 542 (D.C. Cir. 2012) (en banc) (Kavanaugh, J., dissenting).

But there is more. As Judge Walker recently observed, Congress can "change" an entity's "constitutional position" through legislation. *Crim*, 66 F.4th at 1007 (Walker, J., dissenting). The 1998 DMCA—which postdates Circuit precedent characterizing the Library as a legislative body—granted the Librarian sweeping new rulemaking powers. 17 U.S.C. § 1201(a)(1)(C). The DMCA thus substantially altered the Library of Congress's "substantive features by amending . . . the powers it exercises[.]"[15]  *See Crim*, 66 F.4th at 1007 (Walker, J., dissenting). As the Supreme Court has repeatedly confirmed, to the extent such powers are

---

[15] Even if the existence of congressional agencies as such comports with the Constitution's structure, in light of OLC's analysis, it may well be the DMCA's grant of rulemaking power to the Librarian tipped the balance for the Library of Congress, shifting it out of Article I and into Article II. *See* Separation of Powers, 20 Op. O.L.C. at 173 (pre-DMCA OLC opinion characterizing the Library as a "congressional" or "legislative" agency and stating "we think it highly doubtful that Congress constitutionally could . . . afford existing [legislative] agencies novel powers, with respect to executive officials or private persons"); *see generally* Jiles, 52 Admin. L. Rev. at 463 ("With the passage of the DMCA, Congress has begun moving copyright law into the twenty-first century. Yet, in doing so, it has created legislation that raises constitutional issues of separation of powers.").

constitutional, these are necessarily *Article II* executive powers.[16]  *City of Arlington*, 569 U.S. at 304 n.4; *Collins*, 141 S. Ct. at 1785.

If the Librarian was ever within the scope of 5 U.S.C. § 701(b)(1)(A) as part of "the Congress," this proposition does not hold true today.  The Librarian exercises no legislative power, in the constitutional sense.  And regardless of the form CRS's activities take—and whether those activities are more properly categorized as legislative in nature—the Librarian is for all purposes part of an executive Department housed within Article II.  Thus, the APA applies.

Assuming *arguendo* the Librarian could be characterized as an agent of Congress housed within Article I, then the rulemaking at issue would be unconstitutional for various other reasons.  *See MWAA,* 501 U.S. at 276; *see also supra* at p. 9 n.4.  More importantly, one should not take for granted that APA review would be unavailable.  It is both atextual and illogical to conclude that the Library of Congress *qua* legislative-branch entity would be "the Congress" and thus outside the statutory definition of "agency."  *See* Congress, Black's Law Dictionary (4th rev. ed. 1968) (defining "Congress," in relevant part, as "[t]he legislative assembly of the United States, composed of the senate and house of representatives" (citing U.S.

---

[16] The district court agreed the Librarian is "engag[ing] in executive power under Article II when promulgating rules under the DMCA."  JA64.  Yet it failed to grapple with the fact that *all* of this Circuit's caselaw indicating that the Library was not an "agency" under the APA predated Congress's decision to confer this executive power on the Librarian.

Const. art. 1, § 1)); Congress, Webster's 1913 ("6. The collective body of senators and representatives of the people of a nation, esp. of a republic, constituting the chief legislative body of the nation."), https://www.websters1913.com/words/Congress. If Congress had intended to immunize entities like the Library of Congress from APA review, it would have clearly said so.[17]  It did not.

In any case, the Librarian should not be permitted to exercise Article II rulemaking power implicating private rights and then "duck and weave [her] way out of meaningful judicial review," *Fleming*, 987 F.3d at 1111 (Rao, J., concurring in part, dissenting in part), by claiming to be "the Congress" under the APA.[18]  If allowed to stand, this would set a dangerous precedent and provide a roadmap for future circumventions of the APA's judicial review.  As the Supreme Court has explained: "[L]egal lapses and violations occur, and especially so when they have no consequence." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 489 (2015).  Indeed, it is for that reason the Supreme "Court has so long applied a strong presumption

---

[17] The 1947 Attorney General's Manual does not indicate final actions by entities like the Library that implicate private rights are immune from review under the APA. *See* Dep't of Justice, Attorney General's Manual on the Administrative Procedure Act 9–12 (1947) (discussing scope of APA's definition of "agency").

[18] The APA's text indicates only "agencies" may conduct rulemakings. *See* 5 U.S.C. §§ 551(5), 553.

19

favoring judicial review of administrative action."[19] *Id.* Even absent this presumption, it is clear the Librarian's actions are subject to review under the APA.

## CONCLUSION

For the above reasons, this Court should reverse the district court.

Respectfully submitted,

/s/ Michael Pepson
Michael Pepson
Ryan P. Mulvey
AMERICANS FOR PROSPERITY FOUNDATION
1310 N. Courthouse Road, Ste. 700
Arlington, VA 22201
571.329.4529
mpepson@afphq.org

---

[19] "The presumption may be rebutted only if the relevant statute precludes review or if the action is 'committed to agency discretion by law[.]'" *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (citing 5 U.S.C. § 701(a)(1)-(2)).

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of FRAP 29(a)(5) and FRAP 32(a)(7)(B) because it contains 5,173 words. This brief also complies with the typeface and type-style requirements of FRAP 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Times New Roman 14-point font.

Dated: June 9, 2023

_____/s/ Michael Pepson_____

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2023, I electronically filed the above Brief of Amicus Curiae Americans for Prosperity Foundation in Support of Petitioners with the Clerk of the Court by using the appellate CM/ECF system.  I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

       /s/ Michael Pepson