**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 23-5067**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

MEDICAL IMAGING & TECHNOLOGY ALLIANCE, et al.,
Plaintiffs-Appellants,

v.

LIBRARY OF CONGRESS, et al.,
Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-00499, Honorable Beryl A. Howell)

———————————

**BRIEF FOR APPELLEES**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MATTHEW M. GRAVES
  *United States Attorney*

DANIEL TENNY
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4819*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), I certify as follows:

## A.    Parties and Amici

Plaintiffs in district court, and appellants here, are Medical Imaging & Technology Alliance and Advanced Medical Technology Association. Defendants in the district court, and appellees here, are the Library of Congress and Carla Hayden, in her official capacity as Librarian of Congress. The National Association of Manufacturers, the Washington Legal Foundation, and the Americans for Prosperity Foundation are amici curiae before this Court.

## B.    Rulings Under Review

The ruling under review is the opinion and order entered on March 7, 2023. *See Medical Imaging & Tech. All. v. Library of Cong.*, No. 1:22-cv-00499, 2023 WL 2387760 (D.D.C. Mar. 7, 2023) (Howell, Chief J.) [JA033].

## C.    Related Cases

The case on review has not previously been before this Court or any other, save the district court from which it originated. The undersigned counsel is unaware of any related cases currently pending in any court.

*/s/ Laura E. Myron*
Laure E. Myron

# TABLE OF CONTENTS

**Page**

GLOSSARY

STATEMENT OF JURISDICTION ..................................................1

STATEMENT OF THE ISSUES ......................................................1

STATEMENT OF THE CASE ..........................................................2

     A.    Statutory Background ................................................2

     1.  The Library of Congress and the APA ................................2

     2.  The Copyright Act and the Digital Millennium
        Copyright Act................................................4

     B.    Factual Background ................................................6

     C.    Prior Proceedings ................................................9

SUMMARY OF ARGUMENT ........................................................10

STANDARD OF REVIEW ............................................................14

ARGUMENT ................................................................................14

I.    The District Court Correctly Concluded That Sovereign
    Immunity Bars Plaintiffs' APA Claims ..................................14

     A.    Both The Statute's Plain Text And This Court's
        Precedent Dictate That The Library Of Congress
        Is Not Subject To The APA ........................................14

B.    An Entity May Not Be An Agency Under The APA
      For Some Functions But Not Others................................................20

C.    The Library's Status For Constitutional Purposes
      Has No Relevance Here................................................................25

II.   The District Court Correctly Concluded That The
      Librarian's Actions Were Not *Ultra Vires* ................................................29

CONCLUSION ................................................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   143 S. Ct. 1258 (2023) ...................................................... 7, 30-31, 32

*Armstrong v. Bush*,
   924 F.2d 282 (D.C. Cir. 1991) ......................................................... 24

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).............................................................................7

*Clark v. Library of Cong.*,
   750 F.2d 89 (D.C. Cir. 1984) ........................................... 3, 10, 14, 15

*Dalton v. Specter*,
   511 U.S. 462 (1994) ................................................................. 20, 26

*DCH Reg'l Med. Ctr. v. Azar*,
   925 F.3d 503 (D.C. Cir. 2019) .................................................. 13, 29

*Eltra Corp. v. Ringer*,
   579 F.2d 294 (4th Cir. 1978) ................................................... 12, 26

*Ethnic Emps. of Library of Cong. v. Boorstin*,
   751 F.2d 1405 (D.C. Cir. 1985) ....................................................... 15

*Federal Express Corp. v. U.S. Dep't of Commerce*,
   39 F.4th 756 (D.C. Cir. 2022)...........................................................31

*Fidelity Mortg. Inv'rs, In re*,
   690 F.2d 35 (2d Cir. 1982), *cert. denied sub nom.*
   *Lifetime Cmtys., Inc. v. Administrative Office of U.S. Courts*,
   462 U.S. 1106 (1983) ...................................................................... 23

*Florida Health Scis. Ctr., Inc. v. Secretary of Health & Human Servs.*,
   830 F.3d 515 (D.C. Cir. 2016) ........................................................ 27

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ................................................................. 20, 26

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Google LLC v. Oracle Am., Inc.*,
  141 S. Ct. 1183 (2021) ........................................................... 13, 31, 32

*Green v. U.S. Dep't of Justice*,
  54 F.4th 738 (D.C. Cir. 2022) ........................................................ 5

*Guerrero-Lasprilla v. Barr*,
  140 S. Ct. 1062 (2020) .................................................................28

*Hohn v. United States*,
  524 U.S. 236 (1998) ................................................................... 19

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
  684 F.3d 1332 (D.C. Cir. 2012) ........................................... 2, 12, 25

*Jones v. United States*,
  526 U.S. 227 (1999) ................................................................... 27

*Keeffe v. Library of Cong.*,
  777 F.2d 1573 (D.C. Cir. 1985) ...................................................... 2

*Kissinger v. Reporters Comm. for Freedom of the Press*,
  445 U.S. 136 (1980) ................................................................... 15

*Lebron v. National R.R. Passenger Corp.*,
  513 U.S. 374 (1995) ................................................................... 25

*Make the Road N.Y. v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ................................................. 28, 29

*McKinney v. White*,
  291 F.3d 851 (D.C. Cir. 2002) ...................................................... 23

*North Am. Butterfly Ass'n v. Wolf*,
  977 F.3d 1244 (D.C. Cir. 2020) ..................................................... 29

*Nyunt v. Chairman, Broad. Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ...................................................... 29

*Partington v. Houck*,
  723 F.3d 280 (D.C. Cir. 2013) ................................................. 23, 24

*Pickus v. U.S. Bd. of Parole*,
  507 F.2d 1107 (D.C. Cir. 1974) ................................................. 21, 22

*Princeton Univ. Press v. Michigan Document Servs., Inc.*,
  99 F.3d 1381 (6th Cir. 1996) ............................................................31

*Ryan v. Department of Justice*,
  617 F.2d 781 (D.C. Cir. 1980) ........................................................ 21

*United States v. Frank*,
  864 F.2d 992 (3d Cir. 1988) ............................................................ 23

*United States ex rel. Attorney Gen. v. Delaware & Hudson Co.*,
  213 U.S. 366 (1909)........................................................................27

*Wacker v. Bisson*,
  348 F.2d 602 (5th Cir. 1965) .......................................................... 23

*Washington Legal Found. v. U.S. Sentencing Comm'n*,
  17 F.3d 1446 (D.C. Cir. 1994) .................................... 11, 14, 16, 17, 22

*Western Org. of Res. Councils v. Zinke*,
  892 F.3d 1234 (D.C. Cir. 2018) ...................................................... 14

**Statutes:**

Act of Feb. 19, 1897, ch. 265, 29 Stat. 538, 544 ....................................17

Administrative Procedure Act (APA):
  5 U.S.C. § 551(1) ................................................................... 11, 16, 21
  5 U.S.C. § 551(1)(A)-(B) ................................................................. 3
  5 U.S.C. § 551(13) ....................................................................... 16
  *5 U.S.C. § 701(b)(1) ...................................................... 3, 11, 16, 21
  5 U.S.C. § 701(b)(1)(A) ........................................................ 1, 10, 14
  5 U.S.C. § 702 ........................................................................ 3, 15

American Television and Radio Archives Act,
  2 U.S.C. § 170 ........................................................................... 18

Copyright Act of 1976:

    17 U.S.C. § 101 *et seq.* ................................................................ 4

        17 U.S.C. § 101 ........................................................................ 4

        17 U.S.C. § 102(a) .................................................................. 4

        17 U.S.C. § 102(a)(1) ............................................................. 4

        17 U.S.C. § 107 ........................................................................ 4

        17 U.S.C. § 109(b)(1)(A) ....................................................... 4

        *17 U.S.C. § 701(e) ....................................................... 12, 19

        17 U.S.C. § 1201(a)(1)(A) ................................................. 5, 8

        17 U.S.C. § 1201(a)(1)(C) ............................................... 5, 20

        17 U.S.C. § 1201(a)(1)(C)(v) .................................................. 33

        17 U.S.C. § 1201(a)(1)(D) ........................................................ 8

Freedom of Information Act (FOIA),

    5 U.S.C. § 552(f)(1) ................................................................... 21

Pub. L. No. 117-328 (2022) .......................................................... 3, 26

2 U.S.C. § 131 *et seq.* ..................................................................... 2

    2 U.S.C. § 136 .......................................................... 3, 11, 17, 18

5 U.S.C. § 101 .................................................................................. 26

5 U.S.C. § 105 .................................................................................. 26

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 1331 ............................................................................... 1

44 U.S.C. § 1501 ......................................................................... 11, 18

44 U.S.C. § 1505(b) ................................................................... 11, 18

**Regulations:**

1 C.F.R. § 5.3 ............................................................................. 11, 18

36 C.F.R. pt. 702 ............................................................................. 18

36 C.F.R. pt. 703 ..................................................................... 18

36 C.F.R. pt. 705 ..................................................................... 18

37 C.F.R. § 201.40(b)(15) ........................................................ 9

## Rule:

Fed. R. App. P. 4(a)(1)(B) ...................................................... 1

## Legislative Materials:

H.R. Rep. No. 94-1476 (1976), *reprinted in*
   1976 U.S.C.C.A.N. 5659, 5787 ......................................... 19

H.R. Rep. No. 105-796 (1998) ............................................... 20

S. Rep. No. 105-190 (1998) .................................................... 5

## Other Authorities:

86 Fed. Reg. 59,627 (Oct. 28, 2021) (codified at 37 C.F.R. § 201.40) ............... 6

Library of Cong., *About the Library*, https://perma.cc/2DQ3-A24C .............. 2

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| FOIA | Freedom of Information Act |
| Librarian | The Librarian of Congress |
| Library | The Library of Congress |

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. JA012. On March 7, 2023, the district court entered its order granting the government's motion to dismiss and denying plaintiffs' motion for summary judgment. *See* JA033-35. Plaintiffs filed a timely notice of appeal on March 24, 2023. JA005; *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

This case concerns a challenge brought under the Administrative Procedure Act (APA) to a rulemaking conducted by the Librarian of Congress to establish an exception to the anti-circumvention provisions of the Digital Millennium Copyright Act of 1998. The APA provides judicial review of final actions taken by an agency, which it defines to exclude "the Congress." 5 U.S.C. § 701(b)(1)(A). The questions presented are:

(1) whether the district court correctly applied this Court's precedents holding that the Library of Congress is not an agency subject to the APA; and

(2) whether the district court correctly held that the Librarian's application of the statutory fair use factors in the rulemaking was not in

contravention of a clear and mandatory statutory prohibition such that

*ultra vires* review would be appropriate.

## STATEMENT OF THE CASE

### A.     Statutory Background

### 1.  The Library of Congress and the APA

The Library of Congress is the largest library in the world and the

main research arm of the U.S. Congress. *See* Library of Cong., *About the*

*Library*, https://perma.cc/2DQ3-A24C. This Court has characterized the

Library as "a congressional agency," *Keeffe v. Library of Cong.*, 777 F.2d 1573,

1574 (D.C. Cir. 1985), but has also recognized that the Library is an

executive department for constitutional purposes, *Intercollegiate Broad. Sys.,*

*Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341 (D.C. Cir. 2012). The

Library "performs a range of different functions, including some, such as

the Congressional Research Service, that are exercised primarily for

legislative purposes," and others that are "generally associated in modern

times with executive agencies rather than legislators," *id.* at 1341-42.

Particularly relevant here, the Library is home to the U.S. Copyright Office.

As a statutory matter, the Library is codified within Title 2, which

governs the legislative branch, *see, e.g.*, 2 U.S.C. § 131 *et seq.*, and receives its

appropriations as part of the legislative branch, *see* Pub. L. No. 117-328, at 456, 471-74 (2022). The Librarian of Congress is authorized to "make rules and regulations for the government of the Library." 2 U.S.C. § 136.

The APA contains a waiver of sovereign immunity and a cause of action against certain "agency action[s]." 5 U.S.C. § 702. For purposes of the APA, Congress provided that the term "agency" means "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," but specified that the term "does not include — (A) the Congress; [or] (B) the courts of the United States. " *Id.* § 701(b)(1); *see also id.* § 551(1)(A)-(B).

This Court has previously held that for purposes of this provision, the Library of Congress is part of "the Congress" and thus is not subject to the APA. *See, e.g.*, *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984). As discussed in more detail below, plaintiffs here urge that this Court's precedent in that regard should be limited to the particular types of actions that were at issue in this Court's prior cases, rather than being treated as a categorical holding that the Library of Congress is not subject to the APA.

### 2.  The Copyright Act and the Digital Millennium Copyright Act.

The Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, prohibits the unauthorized reproduction of "original works of authorship fixed in any tangible medium of expression," *id.* § 102(a), including "computer program[s]," *see id.* §§ 101, 102(a)(1), 109(b)(1)(A). The Copyright Act also provides that "fair use of a copyrighted work, . . . for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research, is not an infringement of copyright." *Id.* § 107. Whether a use of copyrighted material constitutes a fair use involves a case-by-case inquiry in which courts must examine, at a minimum, four statutory factors: (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted work." *Id.*

In 1998, Congress enacted the Digital Millennium Copyright Act in order to address, *inter alia*, the "ease with which digital works can be copied and distributed" and the concern that "copyright owners will

4

hesitate to make their works readily available on the Internet without reasonable assurance that they will be protected against massive piracy." *See* S. Rep. No. 105-190, at 8 (1998). *See generally Green v. U.S. Dep't of Justice*, 54 F.4th 738 (D.C. Cir. 2022).

To combat digital piracy, Congress prohibited, *inter alia*, "circumvent[ing] a technological measure that effectively controls access to a work protected under" the Copyright Act. 17 U.S.C. § 1201(a)(1)(A). Congress both enacted specific exemptions to this prohibition and directed the Librarian of Congress to determine, through triennial rulemaking proceedings, any additional categories of copyrighted materials that should be exempted from the anti-circumvention provision for the next three-year period. *See id.*

As part of the triennial rulemaking, the Librarian must determine whether an exemption from the anti-circumvention provision is warranted because the restriction adversely affects certain users' ability to make noninfringing uses. 17 U.S.C. § 1201(a)(1)(A), (C). The Librarian's determination is made "upon the recommendation of the Register of Copyrights." *Id.* § 1201(a)(1)(C). In order to grant an exemption, the Librarian must conclude "(1) that uses affected by the prohibition on

5

circumvention are or are likely to be noninfringing; and (2) that as a result of [technological protection measures], the prohibition is causing, or in the next three years is likely to cause, an adverse impact on those uses." 86 Fed. Reg. 59,627, 59,628 (Oct. 28, 2021) (codified at 37 C.F.R. § 201.40); *see* JA093.

The Librarian has issued eight Final Rules pursuant to this procedure, including exemptions for "computer programs that control motorized land vehicles" and "computer programs that control smartphones, home appliances, or home systems" for diagnosis, maintenance, or repair, *see* 86 Fed. Reg. at 59,631; excerpts of audiovisual works for criticism and comment, *id.* at 59,632; and literary works for use with assistive technologies for disabled individuals, *id.* at 59,630.

### B.    Factual Background

This case arises from the Librarian's eighth triennial rulemaking. As relevant here, two organizations petitioned the Librarian for an exemption to allow circumvention of technological protection measures for the purposes of diagnosing, maintaining, and repairing certain complex, computer-controlled medical equipment. *See* JA179-81 (Summit Imaging, Inc. Petition); JA182-85 (Transtate Equipment Company Petition). These companies explained that there is a strong public health interest in

6

"maintain[ing] and repair[ing] lifesaving equipment," particularly in light of the COVID-19 pandemic. JA180.

In her recommendation to the Librarian, the Register of Copyrights concluded that the "prohibition on circumvention of [technological protection measures] is causing, or is likely to cause, an adverse impact on the noninfringing diagnosis, repair, and maintenance of medical devices and systems." JA174. The Register of Copyrights considered the statutory fair-use factors and concluded that the activities covered by the proposed exemption would likely constitute a fair use and thus be noninfringing. Specifically, the Register rejected opponents' argument regarding commercial use, noting that "[c]ommerciality is not fatal to a fair use determination" and that here "the proposed activities are intended to restore a medical device or system's functionality, not to commercialize the embedded copyrighted software and other servicing materials." JA154. The Register also explained that diagnosis and repair are likely to be considered "transformative" uses, JA154, a term that refers to whether the use has "a further purpose or different character" from the original, *see Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1275 (2023) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). The

7

Register found the other factors also favored fair use, specifically noting that any uses in which a user reproduced or retained copies of the copyrighted materials for use with other devices would continue to be prohibited because they would be outside the exemption's scope. JA157.[1]

Finally, the Register explained that the anti-circumvention provision was "adversely affect[ing]," 17 U.S.C. § 1201(a)(1)(A), the repair of medical devices because it "makes medical equipment software and manuals less available for use in noninfringing diagnosis, maintenance, and repair," JA171. In addition, the Register concluded that "the narrow proposed uses and additional limitations on the scope of these activities limit any potential market harm" that might arise from allowing users servicing medical equipment to access the software. JA172.

In the Final Rule, the Librarian adopted the recommendation of the Register, *see* JA 092-101; JA105, exempting from the anti-circumvention

---

[1] Exemptions issued by the Librarian pursuant to Section 1201 only apply to liability for circumvention of technological protection measures; they do not exempt users from liability for copyright infringement. *See* 17 U.S.C. § 1201(a)(1)(D); *id.* § 1201(a)(1)(A). Although the Librarian's fair use analysis may be relevant, the conclusion reflects only that a particular use is likely to be considered fair use. A court would not be bound by that determination in a subsequent action for copyright infringement.

provision "[c]omputer programs that are contained in and control the functioning of a lawfully acquired medical device or system, and related data files, when circumvention is a necessary step to allow the diagnosis, maintenance, or repair of such a device or system," 37 C.F.R. § 201.40(b)(15).

### C.    Prior Proceedings

Plaintiffs—two trade associations that represent medical device manufacturers—filed this suit in the United States District Court for the District of Columbia. The complaint raised four claims challenging the medical device repair exemption: (1) that the Librarian violated the APA because the exemption is arbitrary and capricious, not in accordance with the law, and in excess of statutory authority; (2) that the Librarian violated the procedural requirements of the APA by failing to respond to critical comments; (3) that, in the alternative, the Librarian's issuance of the exemption was beyond her statutory authority and thus *ultra vires*; and, (4) that the Librarian had violated the constitutional separation of powers.

The district court granted the government's motion to dismiss the complaint (and concurrently denied plaintiffs' motion for summary judgment). *See* JA033. The court reasoned that Congress exempted itself

and the Library of Congress from APA review and thus "sovereign immunity bars plaintiffs' procedural and substantive APA claims." JA050-51; *see also* JA051-56. Next, the court found that plaintiffs' *ultra vires* claims fail because "the Librarian's promulgation of the [e]xemption does not amount to the type of extreme statutory error required to state a plausible claim." JA051; *see also* JA056-62. The court explained that plaintiffs' *ultra vires* arguments were merely their APA arguments "recycled," which "fall[] well short of pleading a plausible *ultra vires* claim." JA059. Finally, the court held that the Librarian's rulemaking does not violate the separation of powers, *see* JA051, explaining that Congress's "decision to categorize the Library as part of 'the Congress' . . . has no bearing on whether the exercise of authority in [the] triennial rulemaking is either legislative or executive in function," and there is no constitutional problem with the statute. JA065.

## SUMMARY OF ARGUMENT

1. Nearly 40 years ago, this Court recognized that "the Library of Congress is not an 'agency' as defined under the Administrative Procedure Act." *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) (citing 5 U.S.C. § 701(b)(1)(A)). This Court has repeated that principle in the ensuing

years. *See, e.g.*, *Washington Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994). The district court properly recognized that this line of precedent forecloses plaintiffs' APA claims.

These cases did not depend on the type of function the Library was carrying out in each particular case, instead holding categorically that the Library is not an agency under the APA. This conclusion is consistent with the text of the APA, which provides that the term "agency" does not include "the Congress," 5 U.S.C. §§ 551(1); 701(b)(1), rather than providing for the possibility, posited by plaintiffs, that a single entity would be treated as an agency for some purposes but not for others.

The Library has neither acted nor been treated as an agency since the APA's inception. The Library has rulemaking authority "for the government of the Library [of Congress]," 2 U.S.C. § 136, but this power has never been thought to carry with it APA requirements or review. The Library is also not an agency for purposes of the Federal Register Act. When it does publish in the Federal Register, it does so pursuant to the Federal Register Act's catchall provision for documents authorized to be published by National Archives and Record Administration regulations. 44 U.S.C. § 1505(b); *see* 1 C.F.R. § 5.3; *see also* 44 U.S.C. § 1501 (generally

11

defining "document" as limited to materials produced by agencies "unless the context otherwise requires").

Section 701(e) of the Copyright Act further indicates that Congress does not regard the Library of Congress as an "agency" for purposes of the APA. That later-enacted provision expressly subjects the Copyright Office, a subsidiary of the Library, to the APA, and would have been superfluous if the Library were already an agency. *See* 17 U.S.C. § 701(e).

Plaintiffs do not advance their argument by pointing out that the Library is part of the Executive Branch for constitutional purposes. The APA's definition of an agency has no bearing on the constitutional status of any entity, as both this Court and the Fourth Circuit have recognized. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341-42 (D.C. Cir. 2012); *Eltra Corp. v. Ringer*, 579 F.2d 294, 301 (4th Cir. 1978). Plaintiffs cannot plausibly contend that the APA limits the exercise of executive power only to those entities defined as an agency by the statute, particularly as it is undisputed that the President is not an agency for APA purposes. Because the statutory definition of an agency has no bearing on the entity's constitutional status, there is no basis to apply the canon of

constitutional avoidance. For similar reasons, the presumption of judicial

review also does not advance plaintiffs' claims.

2. The district court correctly concluded that the Librarian's actions

were not *ultra vires*. Plaintiffs' *ultra vires* claims are merely an attempt to

recast their APA claims; they cannot come close to making the required

showing that the Librarian "plainly act[ed] outside the scope of her

delegated powers in promulgating the [e]xemption." JA060 (first alteration

in original) (quotation marks omitted); *see DCH Reg'l Med. Ctr. v. Azar*, 925

F.3d 503, 509 (D.C. Cir. 2019). There is no dispute that the Librarian has the

authority to engage in rulemaking and that her determination to grant an

exemption should rest on a conclusion that the proposed exemption is

likely to constitute a non-infringing use of the copyrighted material.

Plaintiffs' allegation is that the Librarian misapplied the fair use factors,

but, even if true, this allegation would not satisfy this Court's standard for

an *ultra vires* claim. In any event, the Librarian's fair analysis was not

erroneous. The Supreme Court has recognized that a commercial use may

be a fair use, *see Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021),

and here the uses—diagnosis, maintenance, and repair—are likely to be

transformative because their purpose and character are distinct from the
purpose and character of the original.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court decision granting a motion
to dismiss. *See Western Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240
(D.C. Cir. 2018).

## ARGUMENT

### I.    The District Court Correctly Concluded That Sovereign Immunity Bars Plaintiffs' APA Claims.

#### A.    Both The Statute's Plain Text And This Court's Precedent Dictate That The Library Of Congress Is Not Subject To The APA.

1. Nearly 40 years ago, this Court recognized that "the Library of
Congress is not an 'agency' as defined under the Administrative Procedure
Act." *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) (citing 5
U.S.C. § 701(b)(1)(A)). This Court has reiterated that principle in the
ensuing years. *See Washington Legal Found. v. U.S. Sentencing Comm'n*, 17
F.3d 1446, 1449 (D.C. Cir. 1994) ("Thus, we have held that the Library of
Congress (part of the legislative branch but a separate entity from 'the
Congress,' narrowly defined) is exempt from the APA because its
provisions do not apply to 'the Congress'—that is, the legislative branch.").

14

This Court has held, in particular, that because "the Library [of Congress] is not an agency under the Administrative Procedure Act," a "district court was . . . correct in granting summary judgment for the Library on the claim under that act." *Ethnic Emps. of Library of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 145 (1980) (noting that the district court in that case "recognized" that the Freedom of Information Act (FOIA) did not apply to records "in the custody of the Library of Congress, which is not an 'agency' under the Act").

As the district court properly recognized, these precedents foreclose plaintiffs' APA claims. The APA's cause of action and waiver of sovereign immunity apply only to claims challenging actions of an "agency or an officer or employee thereof." 5 U.S.C. § 702. Because this Court has already held that the "the Library of Congress is not an 'agency' as defined under the Administrative Procedure Act," *Clark*, 750 F.2d at 102, plaintiffs' APA claims fail.

Plaintiffs purport to recognize that a panel of this Court cannot disregard past holdings of this Court and thus attempt to distinguish this Court's past cases on the ground that they considered only actions of the

15

Library that were different from the rulemaking at issue here. *See* Br. 40. But this Court did not say that particular actions of the Library did not satisfy the APA's separate definition of "agency action," 5 U.S.C. § 551(13); rather, it stated unequivocally (and repeatedly) that the Library is not an agency under the APA at all.

Plaintiffs also cannot reconcile their position with the statute's text or the logic of this Court's decisions. This Court's holdings were based on the statute's explicit statement that the APA's definition of "agency" "does not include[] . . . the Congress." 5 U.S.C. §§ 551(1), 701(b)(1). This Court concluded that for purposes of this provision, the Library of Congress is part of "the Congress." The Court's analysis did not depend on what the Library was doing in a particular case; rather, this Court recognized that Congress "defined 'agency' in terms of the branch of government in which the entity was (or was not) located" and did not "limit[] its exemption to 'the courts[]' or any other unit smaller than one of the three branches." *Washington Legal Found.*, 17 F.3d at 1449. Thus, this Court has understood "the Congress" as referenced in the APA "to mean the entire *legislative* branch," including the Library of Congress. *Id.* As noted above, that

understanding resolves the question of the APA's applicability to the Library of Congress.

2. This Court's precedents align with the way the Library has acted and has been treated since the APA's inception. The Library of Congress has never been thought of as an agency for APA purposes, and it does not behave as one. By statute, the Librarian has been authorized by Congress since 1897 to "make rules and regulations for the government of the Library [of Congress]." 2 U.S.C. § 136; *see also* Act of Feb. 19, 1897, ch. 265, 29 Stat. 538, 544. Such rulemaking power has never been thought to carry with it APA requirements or review. The Library does not adhere to the procedural requirements of Section 553 of the APA when it engages in such rulemaking, and that practice has never been questioned.

Moreover, the Library of Congress is not an agency for purposes of the Federal Register Act—just as it is not an agency for purposes of the APA—and, thus, is not required by the Act to publish its regulations or other orders in the Federal Register. *See also Washington Legal Found.*, 17 F.3d at 1449 (noting the definition of agency in the APA was intended to have "substantially the same meaning" as in the Federal Register Act).

17

Thus, the Library publishes most regulations promulgated by the Librarian under 2 U.S.C. § 136 internally in the Library of Congress Regulations.

In addition to the triennial rulemaking at issue here, however, the Library also occasionally publishes in the Federal Register regulations promulgated by the Librarian where they are of broad public importance. Examples of this practice include rules about conduct on the Library premises, *see* 36 C.F.R. pt. 702, the Library's version of FOIA and *Touhy* regulations, *see id.* pt. 703, and regulations under the American Television and Radio Archives Act, *see* 2 U.S.C. § 170; 36 C.F.R. pt. 705. Such publications are done under the Federal Register Act's catchall provision for documents authorized to be published by National Archives and Record Administration regulations. 44 U.S.C. § 1505(b); *see* 1 C.F.R. § 5.3; *see also* 44 U.S.C. § 1501 (defining "document" as limited to materials produced by agencies "unless the context otherwise requires"). They do not suggest that the Library is an "agency" under the Federal Register Act or the APA.

There are further textual indications that Congress did not regard the Library of Congress as an "agency." In 1976, Congress amended U.S. copyright law to make the Copyright Office—a subsidiary of the Library of

18

Congress—subject to the APA. *See* 17 U.S.C. § 701(e) ("Except as provided by section 706(b) and the regulations issued thereunder, all actions taken by the Register of Copyrights under this title are subject to the provisions of the [APA].")*; see also* H.R. Rep. No. 94-1476, at 171 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5787 ("Under an amendment to section 701 adopted by the Committee, the Copyright Office is made fully subject to the [APA] . . . ."). If the Library of Congress were already an agency, this later enacted statutory provision would be superfluous. *See Hohn v. United States*, 524 U.S. 236, 249 (1998) ("We are reluctant to adopt a construction making another statutory provision superfluous.").

Plaintiffs' suggestion that the Library must be an agency because it was tasked with performing a "rulemaking" is without merit. Plaintiffs presumably do not mean to suggest that rules about conduct on the Library's premises are subject to the APA. To the extent that parts of the triennial rulemaking at issue here are subject to the APA, that is because most aspects of the rulemaking are conducted by the Register of Copyrights, who, as part of the Copyright Office, is subject to the APA. The Digital Millennium Copyright Act specifies that the Librarian of Congress makes the final "determination of affected classes of works [subject to an

19

exemption] . . . 'upon the recommendation of the Register of Copyrights."
H.R. Rep. No. 105-796, at 64 (1998); *see also* 17 U.S.C. § 1201(a)(1)(C). Thus,
even if Section 553 applies to the Copyright Office's development of a
recommendation, that recommendation is not final agency action subject to
judicial review because the ultimate decision-maker is an entity not subject
to the APA. *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992); *Dalton
v. Specter*, 511 U.S. 462, 469-70 (1994). And the Library's action is not subject
to review because the Library is not an "agency" under the APA.

### B.    An Entity May Not Be An Agency Under The APA For Some Functions But Not Others.

As noted, plaintiffs properly do not contend that the Library of
Congress, as a general matter, is an agency under the APA. Their
suggestion that the Library should be considered an "agency" for some
purposes and not others lacks any grounding in the statute's text or this
Court's precedents.

The text of the APA defining an agency does not purport to allow for
an entity to be an agency for some purposes but not for others. The statute
does not provide that an entity shall be considered an agency based on the
function the entity is carrying out but rather on the identity of the entity

itself. *See* 5 U.S.C. §§ 551(1), 701(b)(1). Plaintiffs' assertion that "[t]he APA's text is entirely capable of . . . treating [the Library] as an 'agency' in some circumstances but not others," Br. 22, is thus unaccompanied by any explanation or citation. The statute's text defines the term "agency" not on a case-by-case basis but in terms of an entity's characteristics. This Court has decided that the Library is part of "the Congress" for these purposes and that is the end of the matter.

This Court has repeatedly rejected plaintiffs' requested chameleon approach to defining an agency. *See, e.g.*, *Ryan v. Department of Justice*, 617 F.2d 781 (D.C. Cir. 1980); *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107 (D.C. Cir. 1974). In *Ryan*, this Court rejected an argument that when the Attorney General was acting in his capacity "to advise and assist the President," he should be exempted from the definition of agency in FOIA (which relies on the APA definition of "agency." 617 F.2d at 789; *see* 5 U.S.C. § 552(f)(1)). The Court explained that "[a]ny unit or official that is part of an agency and has non-advisory functions cannot be considered a non-agency in selected contexts on a case-by-case basis." *Ryan*, 617 F.2d at 789. In this case, plaintiffs impermissibly seek to apply the definition of "agency" "in selected contexts on a case-by-case basis." *Id.*

21

In *Pickus*, this Court rejected an argument by the U.S. Board of Parole, an entity housed within the Department of Justice, that it should not be considered an agency for purposes of APA review because its functions were like those of the Probation Service, an entity in the judicial branch. This Court explained that "[t]he exemption of [the Probation Service] is warranted not by the functions it performs . . ., but by its status as an auxiliary of the courts, which, unlike agencies of the executive branch, are specifically excluded." *Pickus*, 507 F.2d at 1112. Here, the Congress is specifically excluded, and the Library is exempted from the definition of "agency" for that reason regardless of the functions it performs.

Similarly, in *Washington Legal Foundation*, this Court applied the definition on an entity-by-entity basis, noting that "virtually every case interpreting the APA exemption for 'the courts of the United States' has held that the exemption applies to the entire judicial branch—at least to entities within the judicial branch that perform functions that would otherwise be performed by courts." 17 F.3d at 1449. Having acknowledged that Congress intended to treat the Library of Congress as an "entit[y] within the [legislative] branch," plaintiffs cannot properly argue that it falls outside the exemption. *Id.* Other circuits have similarly rejected arguments

22

that because an entity performs an administrative or executive function, it must be subject to APA review for those functions. *See, e.g.*, *In re Fidelity Mortg. Inv'rs*, 690 F.2d 35, 38-39 (2d Cir. 1982) (rejecting application of APA rulemaking requirements "[a]lthough the Conference was performing an administrative function"), *cert. denied sub nom. Lifetime Cmtys., Inc. v. Administrative Office of U.S. Courts*, 462 U.S. 1106 (1983); *see also United States v. Frank*, 864 F.2d 992, 1013 (3d Cir. 1988) ("Housing the [U.S. Sentencing] Commission in the judicial branch, has the effect, as a matter of statutory interpretation, of exempting it from certain statutes which would otherwise apply, [including] the [FOIA]."); *Wacker v. Bisson*, 348 F.2d 602, 608 n.18 (5th Cir. 1965) (explaining that an extradition hearing held by United States Commissioner, which is "an arm of the District Court" is not "an 'agency' for purposes of the APA.").

In *Partington v. Houck*, 723 F.3d 280, 289 (D.C. Cir. 2013), and *McKinney v. White*, 291 F.3d 851 (D.C. Cir. 2002), this Court expressly declined to hold that an entity might be an agency for purposes of the APA in some circumstances but not others. The district court in *McKinney* had done so, but this Court "did not discuss whether the Judge Advocate General is an agency," instead concluding that "Congress's decisions to

23

establish a separate judicial system for courts-martial review . . . together with the exclusion of courts martial from the APA's definition of 'agency,' precluded APA review of the Judge Advocate General's decision." *Partington*, 723 F.3d at 290.

The passage from *Armstrong v. Bush* on which plaintiffs rely provides that Congress intended to "avoid a formalistic definition of 'agency' that might exclude authority *within the executive branch* that should appropriately be subject to the requirements of the APA," 924 F.2d 282, 289 (D.C. Cir. 1991) (emphasis added). The relevant point here is whether an entity is treated as part of the Executive Branch for these purposes, which the Library is not. More generally, *Armstrong* and other cases involving whether entities within the Executive Office of the President are excluded from being agencies because they perform only advisory functions have no apparent relevance here; the Library of Congress is not excluded from the definition of "agency" on that basis but rather because it is part of "the Congress."

24

**C.    The Library's Status For Constitutional Purposes Has No Relevance Here.**

Plaintiffs do not advance their argument by pointing out that the Library is part of the Executive Branch as a constitutional matter. Nothing in the APA's definition of an agency has any bearing on the constitutional status of the described entities. The Supreme Court has long recognized that Congress can define the "government" for statutory purposes without bearing on constitutional ones. *See Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995). Similarly, when this Court has recognized that the Library of Congress is an executive department for constitutional purposes, it noted that such a determination was permissible even though the Library "performs a range of different functions, including some, such as the Congressional Research Service, that are exercised primarily for legislative purposes." *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341-42 (D.C. Cir. 2012). The relevant point is that the constitutional designation of the Library within the Executive Branch is independent of the statutory question.

The Fourth Circuit likewise concluded that, for purposes of constitutional analysis, it was "irrelevant that the Office of the Librarian of

Congress is codified under the legislative branch or that it receives its appropriation as a part of the legislative appropriation." *Eltra Corp. v. Ringer*, 579 F.2d 294, 301 (4th Cir. 1978). By contrast, when considering the APA's statutory definition of an agency, which specifically excludes "the Congress," how the Library of Congress is treated as a statutory matter is particularly relevant. *See, e.g.*, Pub. L. No. 117-328, at 456, 471-74 (funding the Library as part of the legislative branch); *see also* 5 U.S.C. §§ 101, 105 (defining "executive department" and "executive agency" respectively, without reference to the Library of Congress).

Plaintiffs cannot plausibly suggest that the APA or the Constitution somehow limits the exercise of executive power only to those entities defined as an agency by the APA. It is well-settled law that the President is not an agency for purposes of the APA, *see Franklin*, 505 U.S. at 800-01; *Dalton*, 511 U.S. at 469-70, and there can be no dispute that the President engages in executive action. Moreover, if it wanted to, Congress could easily exempt an agency like the Department of State or Education from APA review, and it has exempted numerous actions of various executive agencies from APA review through express preclusion-of-review statutes or by committing certain decisions to agency discretion by law. *See, e.g.*,

*Florida Health Scis. Ctr., Inc. v. Secretary of Health & Human Servs.*, 830 F.3d 515, 518 (D.C. Cir. 2016) (finding Medicare statute bars judicial review). These cases dispose of plaintiffs' suggestion that because the Librarian exercises constitutional executive power or engages in activities thought of as executive, Congress may not treat it as part of the Congress, and thus exempt from APA review for statutory purposes. If Congress had merely stated that decisions of the Librarian were exempt from judicial review, there would be no conceivable separation-of-powers objection, and the analysis does not change because Congress achieved the same result by exempting the Library from the APA.

As a result, there is no basis for this Court to apply the canon of constitutional avoidance. The canon of constitutional avoidance comes into play when "a statute is susceptible [to] two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided." *Jones v. United States*, 526 U.S. 227, 239 (1999) (quoting *United States ex rel. Attorney Gen. v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)). Here, even apart from the fact that plaintiffs' construction of the statute is untenable, there is no constitutional difficulty with concluding that the APA exempts the Librarian's triennial rulemaking

27

from judicial review. To conclude otherwise would require this Court to assume the extraordinary principle that the exercise of executive power constitutionally requires APA review. As noted above, it is well-settled that some entities, including the President and close presidential advisors, exercise executive power without being subject to the APA. The same principle applies to the Librarian.

For similar reasons, plaintiffs' invocation of the presumption in favor of judicial review does not advance their arguments. As an initial matter, the presumption of judicial review is not a presumption that the APA applies nor can it provide a statutory waiver of sovereign immunity, under the APA or any other statute, where one does not exist. Moreover, the presumption only applies when "a statutory provision is reasonably susceptible to divergent interpretation." *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 624 (D.C. Cir. 2020) (quotation marks omitted); *see also* Br. 31 (acknowledging that presumption does not apply when there is "'clear and convincing evidence' of congressional intent to preclude judicial review" (quoting *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020))). For all the reasons already explained, the APA provides a clear expression of Congress's intent to exclude certain entities from its scope, including the

28

provisions that allow for judicial review. The APA's definition of "the Congress" as including the Library of Congress is not "reasonably susceptible" to a different interpretation. *Make the Road*, 962 F.3d at 624 (quotation marks omitted).

## II. The District Court Correctly Concluded That The Librarian's Actions Were Not *Ultra Vires*.

The district court correctly rejected plaintiffs' effort to revive their APA claim by recharacterizing it as an argument that the Librarian's actions were *ultra vires*. *Ultra vires* review is "intended to be of extremely limited scope, and it represents a more difficult course than would review under the [APA]." *North Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1262 (D.C. Cir. 2020) (quotation marks omitted); *see also Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (describing *ultra vires* review as "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds"). As the district court recognized, plaintiffs cannot come close to making the required showing that "the Librarian 'plainly act[ed]' outside the scope of her delegated powers in promulgating the Exemption." JA060-61 (alteration in original); *see DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019).

29

Plaintiffs contend (Br. 43-47) that the Librarian acted outside of statutory bounds because she authorized an exemption to the anti-circumvention provision for an activity that does not constitute a fair use of copyrighted material. But, as the district court recognized, this argument "merely restate[s] [plaintiffs' APA claim] that the Librarian erred in her fair use analysis, which, even if true, would amount to nothing more than a textbook error in statutory interpretation." JA061. There is no question that the statute in question here authorizes the Librarian to engage in rulemaking to grant exemptions to the anti-circumvention provision nor is there any dispute that the exemption, by statute, should rest on a determination that the activity covered by the proposed exemption would likely constitute a non-infringing use of the copyrighted material. Thus, the Librarian's determination that diagnosis, maintenance, and repair of complex, computer-controlled medical equipment would likely constitute a fair use of copyrighted material, even if it were erroneous, would not satisfy this Court's standard for an *ultra vires* claim.

The fatal flaw in plaintiffs' argument is underscored by the fact that the fair-use analysis is by definition a "highly fact-specific determination involving consideration of four different factors." JA061; *see also Andy*

30

*Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1274 (2023) ("[F]air use is a 'flexible' concept, and 'its application may well vary depending on context.'" (quoting *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021))); *Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1390 (6th Cir. 1996) ("The statutory factors are not models of clarity, and the fair use issue has long been a particularly troublesome one."). It is impossible to see how, even if the Librarian's fair use analysis was incorrect, she "patently . . . misconstru[ed] . . . the statute, . . . disregard[ed] a specific and unambiguous statutory directive, or . . . violate[d] some specific command" of the Digital Millennium Copyright Act. JA060-61 (alteration omitted) (quoting *Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022)). This is particularly true given that the Librarian's determination was based on a recommendation of the Register of Copyrights, who analyzed each of the four factors based on the relevant case law and facts presented in the record. At most, as the district court recognized, the "Librarian and plaintiffs just have differing views on the outcome of a fair use analysis here." JA061.

31

Plaintiffs, in any event, are wrong to suggest the Librarian's fair use analysis was erroneous at all. Plaintiffs' primary objections are that the uses in question—diagnosis, repair, and maintenance of medical equipment—are commercial in nature and insufficiently transformative of the copyrighted material to constitute fair use. *See* Br. 44-47. As to the former argument, as the Supreme Court recently observed, "many common fair uses are indisputably commercial." *Google*, 141 S. Ct. at 1204. Indeed, in *Google*, the Supreme Court concluded that Google's copying of tens of thousands of lines of code from a previous program was fair use notwithstanding the fact that Google used that code in its Android platform, which it sold to millions of users. *See id.* at 1191, 1193-94.

As to the latter argument, the Register properly concluded that using the copyrighted materials for the purposes of diagnosis, maintenance, and repair of medical equipment was likely transformative. *See Andy Warhol Found.*, 143 S. Ct. at 1275 (defining transformative as having "a further purpose or different character" from the original). The purpose of the software itself is to operate advanced medical equipment, while the purpose of the uses permitted by the exemption is to restore such equipment's functionality. Moreover, the exemption applies only to these

32

limited uses: diagnosis, maintenance, and repair of medical equipment. Circumvention for other uses of copyrighted material would still be subject to liability under the anti-circumvention provision of Section 1201.

Finally, the record does not support plaintiffs' contention that the Librarian's fair use analysis was pretextual. *See* Br. 48-51. By statute, the Librarian has "discretion to consider additional factors she deems appropriate" when evaluating whether noninfringing uses are being "adversely affected" by the anti-circumvention provision. JA172; *see also* 17 U.S.C. § 1201(a)(1)(C)(v). The analysis of whether a particular use is likely fair use is separate from and a precondition to reach the analysis of whether the use is "adversely affected." *Compare* JA153–157 (fair use analysis), *with* JA169–174 (adverse effects analysis). Here, after having already determined that diagnosis, maintenance, and repair were likely to be fair uses, the Register noted in her analysis of adverse effects that "an exemption to facilitate repair of medical devices and systems could help address . . . broader competitive concerns" in the market for device service and repair and thus, the "public interest in deterring anticompetitive behavior" supports a conclusion that the anti-circumvention prohibition was "adversely affecting the repair of [medical] devices and systems."

33

JA172-73. Plaintiffs are wrong to suggest that consideration of this factor when analyzing whether noninfringing uses were being adversely affected undermines the Librarian's fair use analysis or is beyond the Librarian's statutory authority, particularly as the Librarian and Register have consistently found that diagnosis, maintenance, and repair to restore device functionality are likely to be fair uses of copyrighted device software and manuals. *See* JA099-100, 145-149, 153 (consumer devices; marine vessels); JA096, 129-34 (motorized land vehicles; smartphones; home appliances and home systems); JA123-26 (vehicles, including agricultural machinery).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

MATTHEW M. GRAVES
  *United States Attorney*

DANIEL TENNY
  */s/ Laura E. Myron*
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4819*
  *Laura.e.myron@usdoj.gov*

July 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,900 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*/s/ Laura E. Myron*
LAURA E. MYRON

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2023, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the District of Columbia Circuit by using the appellate

CM/ECF system.  Service will be accomplished by the appellate CM/ECF

system.

*/s/ Laura E. Myron*

LAURA E. MYRON

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 551(1) ................................................................ A1

5 U.S.C. § 701(b) ................................................................ A1

17 U.S.C. § 701(e) ............................................................... A1

17 U.S.C. § 1201(a) ............................................................. A2

## 5 U.S.C. § 551. Definitions

For the purpose of this subchapter—

(1)"agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

> (A) the Congress;

> (B) the courts of the United States;

. . . .

## 5 U.S.C. § 701. Application; Definitions

. . . .

(b) For the purpose of this chapter—

> (1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

> (A) the Congress;

> (B) the courts of the United States;

. . . .

## 17 U.S.C. § 701. The Copyright Office: General Responsibilities and Organization

. . . .

(e) Except as provided by section 706(b) and the regulations issued thereunder, all actions taken by the Register of Copyrights under this title are subject to the provisions of the Administrative Procedure Act of June 11, 1946, as amended (c. 324, 60 Stat. 237, title 5, United States Code, Chapter 5, Subchapter II and Chapter 7).

. . . .

**17 U.S.C. § 1201. Circumvention of Copyright Protection Systems**

(a) Violations Regarding Circumvention of Technological Measures.—

(1)

   (A) No person shall circumvent a technological measure that effectively controls access to a work protected under this title. The prohibition contained in the preceding sentence shall take effect at the end of the 2-year period beginning on the date of the enactment of this chapter.

   (B) The prohibition contained in subparagraph (A) shall not apply to persons who are users of a copyrighted work which is in a particular class of works, if such persons are, or are likely to be in the succeeding 3-year period, adversely affected by virtue of such prohibition in their ability to make noninfringing uses of that particular class of works under this title, as determined under subparagraph (C).

   (C) During the 2-year period described in subparagraph (A), and during each succeeding 3-year period, the Librarian of Congress, upon the recommendation of the Register of Copyrights, who shall consult with the Assistant Secretary for Communications and Information of the Department of Commerce and report and comment on his or her views in making such recommendation, shall make the determination in a rulemaking proceeding for purposes of subparagraph (B) of whether persons who are users of a copyrighted work are, or are likely to be in the succeeding 3-year period, adversely affected by the prohibition under subparagraph (A) in their ability to make noninfringing uses under this title of a particular class of copyrighted works. In conducting such rulemaking, the Librarian shall examine—

      (i) the availability for use of copyrighted works;

      (ii) the availability for use of works for nonprofit archival, preservation, and educational purposes;

      (iii) the impact that the prohibition on the circumvention of technological measures applied to copyrighted works has on criticism, comment, news reporting, teaching, scholarship, or research;

A2

(iv) the effect of circumvention of technological measures on the market for or value of copyrighted works; and

(v) such other factors as the Librarian considers appropriate.

. . . .